```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MASSACHUSETTS
```

UNITED STATES of AMERICA,

    v.                        Case No. 1:17-cr-10269-WGY

REGINALD ABRAHAM,
        Defendant.


```
               DEFENDANT'S PROPOSED
           SUPPLEMENTAL JURY INSTRUCTIONS
```

Defendant, Reginald Abraham, by his counsel, Kevin L. Barron, Esq., and Zachary Lown, Esq., request and respectfully offer for the Honorable Court's consideration, under F.R.Crim.P. Rule 30, the attached supplemental proposed jury instructions on the law of "true threat" and the inferences a jury may drawn from a missing witness.

Dated:   July 22, 2019         Respectfully submitted,
                               Reginald Abraham, Defendant,
                               By his Counsel,
                               s/Kevin L. Barron
                               Kevin L. Barron, Esq.
                               50 State St. - Ste. 600
                               Boston, MA 02109-4075
                               (617) 407-6837


                   CERTIFICATE OF SERVICE

Counsel certifies that he has caused a true copy of this motion to be served today on counsel to all the parties through the CM/ECF of this District as set forth in the notice of electronic filing and that no party requires service by other means.

                          s/Kevin L. Barron

**Supplemental Proposed Instruction No. 1**

TRUE THREAT

A statement is a true threat when a defendant intentionally makes a statement in a context or under such circumstances where a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily injury on an individual.  Furthermore, you must be persuaded beyond a reasonable doubt that the defendant intended the person receiving the alleged threat to understand the communication to be a threat to do bodily harm to the person receiving the threat or to another individual. See, *Elonis v. United States*, 575 US __, No. 13-983, slip op. p. 7 (June 1, 2015) (whether conviction of threatening another person over interstate lines under 18 USC § 875(c)[ requires proof of subjective intent to threaten, or whether it is enough to show that a "reasonable person" would regard the statement as threatening).

Counsel's Notes

The Supreme Court's 2015 decision in *Ellonis* indicates that this Court should instruct the jury on the defendant's required subjective mental state in making any alleged threat.   In

*Elonis*, the Supreme Court reversed the conviction of a defendant for making "communication[s] containing any threat . . . to injure the person of another." in violation of 18 USC §875(c)[1]. *Elonis v. United States*, 575 US __, No. 13-983, slip op. p. 7 (June 1, 2015) .  Defendant had made a series of face book social media postings in the form of purported "rap" lyrics threatening, *inter alia*, to murder his ex-wife, commit school shootings, slit the throat of an interviewing female FBI agent. *Elonis,* slip. op. 4-6.  Defendant was charged under 18 USC §875(c) and moved to dismiss on the grounds that the charged conduct did not constitute a true threat.  *Id.,* p. 6.  The District Court denied the motion, holding that Third Circuit precedent required only that defendant "intentionally made the communication, not that he intended to make a threat." *Id.*  The trial court charged the jury on the meaning of a true threat as set forth in quotation marks in the first paragraph above:

> A statement is a true threat when a defendant
> intentionally makes a statement in a context or under
> such circumstances wherein a reasonable person would
> foresee that the statement would be interpreted by
> those to whom the maker communicates the statement as
> a serious expression of an intention to inflict bodily
> injury or take the life of an individual.

*Id.* at 7.

---

[1] 18 USC §875(c): Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

3

The Supreme Court held that such instruction was error, reasoning that where federal criminal statutes are silent on the required mental state, a court must "read into the statute only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct." *Id.* at 12.  [internal quotes and citations omitted]  *Elonis* reasons further that:

> The parties agree that a defendant under Section 875(c) must know that he is transmitting a communication.  But communicating *something* is not what makes the conduct "wrongful." Here "the crucial element separating legal innocence from wrongful conduct" is the threatening nature of the communication. [citation omitted]  The mental state requirement must therefore apply to the fact that the communication contains a threat.

*Id.* at 13.

The Supreme Court's ruling in *Watts* further supports defendants' request for an instruction on true threat because such an instruction is required in the First Amendment context. *Watts was* a criminal case where the defendant was convicted for threatening to shoot then president Johnson during defendant's 1966 speech on the Washington Monument. See, *Watts v. United States*, 394 U.S. 705 (1969)(per curiam)(discusses labor context, *infra*).  In the course of an impromptu speech against his conscription, Watts said that if he were made to carry a rifle "the first man I want to get in my sights is L.B.J." *Id.* Watts was subsequently convicted of violating 18 USC §871(a) for "knowingly and willfully . . . making any threat to take the

4

life of or to inflict bodily harm upon the President of the United States. . . ." *Id.*

Finding the statute to be valid on its face, the Supreme Court nonetheless held that the government had not proven that defendant had been willful in making a "true threat" because the Court could "not believe that the kind of political hyperbole indulged in by petitioner fits within that statutory term". *Id.* at 708. The High Court reasoned that, when reviewing a conviction based on speech,

> we must interpret the language Congress chose "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan,* 376 U. S. 254, 376 U. S. 270 (1964). The language of the political arena, like the language used in labor disputes, *see Linn v. United Plant Guard Workers of America,* 383 U. S. 53, 383 U. S. 58 (1966)[involving a defamation suit], is often vituperative, abusive, and inexact.

*Id.*

**Defendant's Supplemental Proposed Instruction No. 2,**

**Missing Witness**

If it is peculiarly within the power of the government to produce a witness who could give material testimony, or if the witness would be favorably disposed to the government, failure to call that witness may justify an inference that her testimony would be unfavorable to the government.  No such inference is justified if the witness is equally available or favorably disposed to both parties or if the testimony would merely repeat other evidence.

Source: First Circuit Pattern Criminal Jury Instructions, "2.12 Missing Witness".

Notes of Counsel

The government has repeatedly elicited testimony from the complaining witnesses that defendant beat and abused Kayla Bausha.  Ms. Bausha gave statements to agents that defendant, *inter alia*, beat and abused her and that she was afraid of him.  Ms. Bausha has given repeated statements to agents that are unfavorable to defendant.

The defense is entitled to the missing witness instruction on a showing that the uncalled witness is "favorably disposed" to testify on behalf of the government -- meaning that the government ordinarily would be expected to produce that witness -- or that the witness is "peculiarly available" to the government). *United States v. Perez,* 299 F.3d 1, 3 (1st Cir. 2002) and *United States v. Anderson*, 452 F.3d 66 (1st Cir. 2006).

In her October 18, 2017 grand jury testimony, Ms. Bausha denied that she has ever worked for defendant as a prostitute:

> Q In the time that you lived with Ricky you never knew him to prostitute women?
>
> A No, I knew him to be a little bit of a -- excuse my language -- but, I mean, he was a man whore, and he -- yeah, he did a lot of bachelor parties and stuff. As far as prostitution goes with other people, I don't really know. I didn't -- I didn't really care too much about any of that stuff that was going on. I don't know if it was happening. *I was doing it by myself to support my drug habit that I had.* [emphasis added]
>
> Q So Ricky never posted an ad for you?
>
> A He didn't post an ad for me, no. I posted my own ads.

October 18, 2017 grand jury testimony, pp. 12 - 13.  The government asked Bausha whether defendant had ever been violent with her and she responded:

> A  It was usually over drugs, or girls, one or the other. If I found out he slept with somebody, I would get pissed off about it and I'd hit him and then he'd

7

>       slap me back, or, you know, that type of thing. It
>       happened like three times.

October 18, 2017 grand jury testimony, p. 15.

The government impeached Bausha with her prior statements to agents, and Bausha responded as follows:

>       A  When I met with them, I was in jail, I was detoxing,
>       and I wanted to get out, and I was under the
>       impression, you know, basically, it kind of made it
>       seem like if I say things, I would be to get out, and,
>       I mean, they said as soon as the next day, which
>       didn't happen, but, uhm . . . so I fabricated a lot of
>       stuff.

October 18, 2017 grand jury testimony, p. 17.

The government impeached Bausha with a later-in-time statement inculpating defendant, and Bausha responded:

>       A  I was kind of living with my mom, but I had just
>       gotten back from a program in Ohio, and that's when I
>       relapsed, so I was a little all over the place at that
>       time.
>
>       Q  Do you recall telling them, again, in the April
>       visit that Abraham had been your pimp?
>
>       A  No, I don't. I don't recall much of the April
>       visit, besides the fact that I got an ice cream after.

October 18, 2017 grand jury testimony, p. 18.

The defendant's investigator contacted Ms. Bausha in early May and spoke to her, but Ms. Bausha refused to testify voluntarily for the defense. Her statements to the investigator are essentially the same as those to the grand jury and to agents. Counsel directed the investigator to cease contacting Ms. Bausha after the government's statements on record at a May

20 scheduling conference.  The government's statements suggested potential witnesses were intimidated by the investigator's use of the defendant's face book account and other attempts to contact them.

On July 20, 2019, counsel called the number the private investigator used to speak to Ms. Bausha in May.  Counsel left a voice message that was not returned.  The defense has not subpoenaed Ms. Bausha and Ms. Bausha did not confirm her address.

Ms. Bausha is peculiarly available to the government.  The government is not calling her to hide her allegations that agents handled her deceptively.  The government also wishes to avoid introducing her grand jury statements that Mr. Abraham did not assault her.  Whether to issue this instruction rests within the Court's sound discretion.  *Perez, id.* and *United States v. DeLuca*, 137 F.3d 24, 38 (1st Cir. 1998), *United States v. Lewis*, 40 F.3d 1325, 1336 (1st Cir. 1994) and *United States v. Welch*, 15 F.3d 1202, 1214 (1st Cir. 1993).

The circumstances described make a sufficient showing to generate a missing witness instruction.  The proponent of such an instruction must demonstrate that the witness would have been either favorably disposed to testify on behalf of the government by virtue of status or relationship or peculiarly available to the government.  The court must then consider the explanation (if any) for the witness's absence and whether the witness, if

called, would be likely to provide relevant, non-cumulative testimony. *Perez, supra*.

Dated:    July 22, 2019

                                        <u>s/Kevin L. Barron</u>
                                        Kevin L. Barron, Esq.